
FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER KYLE GORDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: CV507-057 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge G. William Davenport ("the ALJ" or "ALJ Davenport") denying his claim for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff received Supplemental Security Income Benefits based on his disability as a child after receiving head injuries from a motor vehicle accident. Plaintiff's eligibility for his disability benefits was redetermined on March 27, 2003, and it was decided Plaintiff was no longer disabled as of March 1, 2003; his benefits terminated on May 1, 2003. (Tr. at 18). This determination was upheld upon reconsideration after a disability hearing by a State Agency Disability Hearing Officer. Plaintiff filed a timely request for a hearing. On November 16, 2006, ALJ Davenport conducted a video hearing at which

Plaintiff appeared and testified. Kim Bennett, a vocational expert, also appeared and testified at this hearing. ALJ Davenport found that Plaintiff was no longer disabled as of March 1, 2003. (Tr. at 19). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 7).

Plaintiff, born on July 3, 1984, was twenty-two (22) years old when ALJ Davenport issued his decision. He has a high school education. (Tr. at 27, 151).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process[1] to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20

---

[1] The medical improvement review standard does not apply to disability redeterminations at age 18; instead, the "definition of disability used for adults who file new applications for supplemental security income benefits based on disability must be applied." (Tr. at 19); see also 20 C.F.R. § 416.987(b) (noting specifically that the rules for adults who file new applications explained in 20 C.F.R. §§ 416.920(c)-(g) are used to redetermine eligibility for individuals who turn 18 after receiving benefits).

C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291.

In the instant case, the ALJ followed this sequential process to determine that the substantial gainful activity step is not used for redetermining disability at age 18. (Tr. at 19, citing 20 C.F.R. § 416.987(b)). At Step Two, the ALJ determined that Plaintiff had closed head injury and sequelae, status post leg and ankle surgeries, and ongoing marijuana abuse, conditions considered "severe" under the Regulations. However, the ALJ also determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Tr. at 24). The ALJ found that Plaintiff had the residual functional capacity to perform heavy exertional work with the following limitations: no standing more than 2½ to 3 hours without taking a break; mild to moderate limitations in relating to co-workers and dealing with the public; mild limitations in maintaining attention and concentration and understanding, remembering and carrying out detailed instructions; and moderate limitations in using judgment,

behaving in an emotionally stable manner, and relating predictably in social situations. ALJ Davenport noted Plaintiff was best suited for highly structured work done under careful supervision which would not require prolonged interpersonal interactions. ALJ Davenport also noted Plaintiff should not work in jobs giving him access to controlled substances, such as marijuana. (Id.). At the next step, ALJ Davenport noted Plaintiff did not have any past relevant work experience. (Tr. at 25). ALJ Davenport found that, as of March 1, 2003, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform the following jobs which existed in significant numbers in the national economy: commercial cleaner, unskilled, heavy exertional work; store laborer, unskilled, medium exertional work; kitchen helper, unskilled, medium exertional work; and gate guard, semi-skilled, light exertional work. (Tr. at 26).

## ISSUE PRESENTED

Plaintiff asserts the ALJ improperly discounted the findings of all of his treating and consultative physicians and, therefore, improperly ceased Plaintiff's disability payments.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart,

395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

Plaintiff contends ALJ Davenport did not discuss the findings of Dr. Marc Eaton, the consultative examiner, who found Plaintiff had moderate to marked limitation in relating to co-workers and supervisors, dealing with work stresses, behaving in an emotionally stable manner, and relating predictably in social situations and a marked impairment in dealing with the public. Plaintiff also contends the ALJ incorrectly discredited the statement of Dr. Jill Goggans, his long-term treating physician, that Plaintiff had personality disorders which affected his ability to obtain and keep a job based on the ALJ's finding Plaintiff had not seen Dr. Goggans since 2002. Plaintiff asserts ALJ Davenport did not properly credit the findings of Dr. Russell Addeo, a neuropsychologist, who opined Plaintiff had moderate limitations in understanding and

remembering short, simple instructions; understanding, remembering, and carrying out detailed instructions; making judgments in simple work-related decisions; interacting appropriately with co-workers; and responding appropriately to changes in a routine work setting, and marked limitations interacting appropriately with supervisors and responding appropriately to work pressures in a usual work setting. (Pl.'s Br., p. 4). Plaintiff avers ALJ Davenport refused to credit Dr. Enrique Fernandez's opinion that he had a very poor attention span, was easily agitated, and had poor impulse and anger control. Plaintiff contends the ALJ rejected the opinion of James Goolsby, a certified brain injury specialist, who found Plaintiff to have significant problems with decision making, impulsivity, poor judgment, lack of focus and forethought, and impaired interpersonal communication skills. Plaintiff also contends the ALJ did not credit the statement of one of his former employers, who had to remind Plaintiff constantly to stay on task and who had to let Plaintiff go. Finally, Plaintiff contends ALJ Davenport did not consider evidence that he lost other jobs due to the problems he experienced after his accident.

Defendant alleges ALJ Davenport's residual functional capacity finding for a reduced range of work at the heavy exertional level is well supported. For instance, Defendant points to Dr. Jones' physical capacity evaluation, which placed Plaintiff within the heavy exertional work category. Defendant asserts the limitations ALJ Davenport found Plaintiff to have, such as standing no more than 2½ to 3 hours at a time, came from the reports of Drs. Novack, Gennett, Coyle, and McIntosh. Defendant contends ALJ Davenport properly gave diminished weight to the statements of Drs. Addeo, Goggans, and Fernandez. Defendant points to: the limitations Dr. Addeo found Plaintiff

to have and that these limitations stand in contrast to the contents of his neuropsychological report; Dr. Goggans' opinion that Plaintiff had an inability to work, as this is a decision reserved for the Commissioner, as well as her failure to diagnose any personality disorders; and Dr. Fernandez's statement that Plaintiff had poor attention and impulse control was not supported by his findings as reasons to discount the opinions of these doctors. Defendant avers the ALJ pointed to Dr. Eaton's report, which supports the determination that Plaintiff was no longer under a disability as of March 1, 2003. Defendant asserts ALJ Davenport implicitly rejected the letter from Plaintiff's former employer, as Plaintiff worked for him when he was 12 years old. Finally, Defendant asserts the vocational expert testified Plaintiff could not return to his work as a patient transporter because this job was more demanding than the jobs the vocational expert determined Plaintiff could perform.

The "opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985). However, "[a]lthough the opinion of a claimant's examining physician is accorded substantial weight, it is not necessarily dispositive on the issue of disability." Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987). The opinions from treating sources "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent with the treating physician's opinion; or (3) the treating

physician's opinion is conclusory or inconsistent with his own medical records. Id. at 1241.

ALJ Davenport noted Plaintiff sustained a traumatic brain injury due to a motor vehicle accident in 2002. ALJ Davenport also noted Dr. Charles McAleer conducted a neuropsychological evaluation of Plaintiff, which revealed Plaintiff had frontal lobe features such as argumentativeness, inattentiveness, social inappropriateness, and what appeared to be minimal effort. Dr. McAleer opined Plaintiff's behavior was secondary to his traumatic brain injury, which he hoped would get better over time. The ALJ observed Dr. McAleer found Plaintiff lost some degree of intellectual power, especially in the areas of abstract reasoning and complex problem solving, and there was evidence of moderately impaired problems with acquisition and storage of new information in both verbal and visual modalities. ALJ Davenport noted Dr. McAleer diagnosed Plaintiff with a Global Assessment of Functioning ("GAF") of 70. (Tr. at 21).

ALJ Davenport also noted Dr. Steven Novack's (a treating physician) opinion that Plaintiff "was getting along well" and that his social behavior and cognition "demonstrated much improvement over the past visits." (Id.). Dr. Novack thought Plaintiff could return to some sort of employment, such as his previous job as a groundskeeper, but that he could not stand for longer than 2½ to 3 hours without a break, as he did not want to risk Plaintiff falling and hitting his head. The ALJ stated that, because Plaintiff was not on any medications or psychotropics, Dr. Novack would see him on an "as needed" basis. (Id.)

The ALJ stated Dr. Enrique Fernandez opined Plaintiff had poor impulse and anger control, a short attention span, and was agitated easily. The ALJ noted that Dr.

AO 72A
(Rev. 8/82)

8

Jill Coggans opined Plaintiff would be unable to keep a job for an extended period of time due to his sudden outbursts of agitation sporadically, which was caused by a personality disorder. ALJ Davenport stated he gave little weight to the opinions offered by Drs. Fernandez and Coggans because these conclusions were reserved to the Commissioner. Additionally, ALJ Davenport thought Dr. Coggans had not seen Plaintiff since 2002 and Dr. Fernandez only had a brain scan with no interpretation, which he found "less [than] impressive." (Tr. at 22).

ALJ Davenport observed Dr. Russell Addeo evaluated Plaintiff and opined he appeared to have a mild degree of cognitive impairment secondary to the severe brain injury he sustained in 2002. ALJ Davenport also observed Dr. Addeo found Plaintiff to have certain impairments which were "particularly evident" in executive functioning, impulsivity, ability to problem solve, disinhibition, right hand sequencing, verbal memory, lack of proper forethought, and impaired ability to monitor his own behavior. (Id.). Dr. Addeo diagnosed Plaintiff with cognitive disorder NOS, impulse control NOS, borderline personality traits, severe traumatic brain injury with significant frontal and temporal contusions in 2002, and a GAF score of 55.

The ALJ noted Dr. Addeo completed a medical source statement of ability to do work-related activities (mental) approximately three (3) weeks after he evaluated Plaintiff. Dr. Addeo found Plaintiff had: moderate limitation in his ability to understand and remember short, simple instructions; slight limitation in his ability to carry out short, simple instructions; moderate limitation in his ability to understand, remember, and carry out detailed instructions; moderate ability to make judgments on simple work-related decisions; moderate limitations in his ability to interact appropriately with the public and

co-workers; marked limitations in his ability to interact with supervisors and to respond appropriately to changes in a routine work setting; and poor problem solving skills. However, ALJ Davenport rejected Dr. Addeo's statement because, during his evaluation of Plaintiff a few weeks prior, there was "almost nothing" "objectively wrong" with Plaintiff. (Id.). ALJ Davenport did not understand how Dr. Addeo could assess the limits to Plaintiff that he did. ALJ Davenport also noted criminal courts were not impressed with Dr. Addeo's limitations, as Plaintiff was sentenced to a four (4) year prison term after being given probation, making As in college, and "dropping out to smoke dope." (Id.). The ALJ found that comparing Dr. Addeo's finding that Plaintiff had a GAF of 55 with his medical source statement three (3) weeks later made it seem like Dr. Addeo was not speaking about the same patient.

The ALJ pointed to the assessment provided by Plaintiff's treating brain injury specialist, Dr. W.J. McIntosh, who recognized Plaintiff's social limits. Dr. McIntosh recommended Plaintiff continue working toward his college studies, and then work in the computer field in a structured, supervised job. (Tr. at 23). Dr. McIntosh found Plaintiff should not pursue a job which required significant interaction with other people, and he recommended Plaintiff engage in an anger management program and a social skills training program for people with brain injuries. ALJ Davenport observed Dr. McIntosh's opinion that Plaintiff had progressed since his accident and would likely continue to do so if he followed Dr. McIntosh's recommendations and continued with his rehabilitation efforts.

Mr. James Goolsby performed a brain injury assessment of Plaintiff, and he admitted having problems at Warms Springs Institute, which resulted in his termination

from that program. ALJ Davenport observed Plaintiff's problems in the program "stemmed from him doing too much horseplay with a female patient and remaining in a room with another female patient without permission and against the rules." (Id.). ALJ Davenport noted Mr. Goolsby explained to Plaintiff the nature and purpose of a re-entry program, in which Plaintiff seemed interested, and Plaintiff seemed anxious to get away from home because he was bored and unchallenged. The ALJ also noted Plaintiff's "considerable pride" in learning how to sell items on eBay, and that he developed a website with the help of his mother's friend. (Id.) Mr. Goolsby determined Plaintiff had a significant problem with poor decision making, impulsivity, poor judgment, lack of focus and forethought, and impaired interpersonal communication skills and demonstrated inappropriate behaviors resulting in his incarceration and his discharge from another rehabilitation program.

Finally, ALJ Davenport noted Plaintiff's testimony at the hearing, and noted Plaintiff's plan to return to college after he received treatment for his brain injury. ALJ Davenport also noted Plaintiff did housework, cooked, washed the dishes, did the laundry, and took out the trash. Plaintiff stated he did not go to the movies because he was on house arrest. ALJ Davenport found Plaintiff's allegations of poor mental focus hard to believe because he uses Internet chat rooms, sells items on eBay, developed his own website, plays the guitar, can drive, and can sit through both Sunday school and a sermon. (Tr. at 24-25).

Though Plaintiff cites several pages of the record he contends the ALJ improperly discounted, much of this evidence does not appear to support Plaintiff's position that he is entitled to benefits. For example, records from Dr. Marc Eaton (Tr. at

710-17) indicate Plaintiff "did not believe that there was any reason that he would not be able to hold employment if he were offered a job" (Tr. at 711), "spends considerable time in chat-rooms on his computer", attends church twice a week, visits with friends, and travels to Thomasville, Georgia, to visit relatives. (Tr. at 712). Additionally, as ALJ Davenport noted, the opinions of Drs. Goggans[2] and Fernandez (Tr. at 780 and 778, respectively) regarding Plaintiff's ability to hold a job were conclusory and concerned decisions reserved for the Commissioner; therefore, he was not required to accept these opinions.[3] Plaintiff also points to a few pages of testimony at the hearing. (Tr. at 913-14, 940). This testimony was elicited from Plaintiff and the vocational expert by Plaintiff's attorney, and the ALJ was not required to accept this information.[4]

ALJ Davenport's determination that Plaintiff was no longer under a disability after March 1, 2003, represents a fair reading as a whole of the evidence of record. ALJ Davenport relied on evidence obtained from Drs. McAleer, Novack, Fernandez, Goggans, Addeo, and McIntosh and Mr. Goolsby in reaching his determination, as well as Plaintiff's testimony. Moreover, ALJ Davenport had "good cause" to reject some of

---

[2] The undersigned notes Plaintiff's last visit with Dr. Goggans was not in 2002, as the ALJ believed, as Plaintiff visited Dr. Goggans on four (4) occasions after 2002. (Tr. at 848-49). However, one (1) of these visits concerned ear pain. (Tr. at 852).

[3] The "ultimate conclusion" that a plaintiff "is disabled is an opinion on an issue reserved for the Commissioner and, as such, is not entitled to controlling weight. Walker v. Barnhart, 158 Fed. Appx. 534, 535 (5th Cir. 2005). "A statement by a medical source" that a plaintiff is "'disabled' or 'unable to work' does not mean" the Commissioner "will determine that [a plaintiff is] disabled." 20 C.F.R. § 404.1527(e)(1).

[4] The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, No. 97-C-1548-N, 1999 WL 1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

the findings of some of Plaintiff's treating physicians. ALJ Davenport's determination is supported by substantial evidence. Plaintiff is not entitled to his requested relief.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 8th day of August, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE